UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TRAVIS JUSTIN SNEED,

                    Petitioner,

        v.

JACK FOX,

                    Respondent.

CASE NO. C14-0894-RSM-MAT

REPORT AND RECOMMENDATION

## INTRODUCTION AND SUMMARY CONCLUSION

Petitioner Travis Sneed is a federal prisoner who is currently confined at the Federal Detention Center at SeaTac, Washington ("FDC SeaTac"). He has filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 in which he alleges violations of his constitutional rights arising out of disciplinary proceedings which resulted in his expulsion from the Bureau of Prisons' Residential Drug Abuse Treatment Program. Respondent has filed a return and motion to dismiss, and petitioner has filed a response to respondent's return. The Court, having reviewed the petition, all briefing of the parties, and the balance of the record, concludes that petitioner's petition for writ of habeas corpus should be denied and this action should be dismissed with prejudice.

REPORT AND RECOMMENDATION
PAGE - 1

BACKGROUND

On August 9, 2011, petitioner was sentenced in the United States District Court for the District of Idaho to 63 months imprisonment following his earlier entry of guilty pleas to one count of Interstate Transportation in Aid of Racketeering and to three counts of Wire Fraud. (*See* Dkt. 17, Attach. L.)  The sentencing court also imposed a three year term of supervised release which included numerous special terms and conditions, among them that petitioner (1) not be self-employed, or employed by friends, relatives, or associates without the approval of the supervising probation officer (2) not possess or use any computer with access to any internet/online computer service without approval of the supervising probation officer; and (3) not engage in employment involving the internet/web without the approval of the supervising probation officer.  (*Id*., Attach. L at 3, 5.)

While in custody, petitioner was accepted into the Bureau of Prisons' ("BOP") Residential Drug Abuse Treatment Program ("RDAP").  (*See* Dkt. 1 at 4.)  RDAP is the program created by the BOP to fulfill the Congressional mandate, set forth in 18 U.S.C. § 3621(e), that residential drug abuse treatment be provided to all eligible prisoners.  *See* 28 C.F.R. § 550.53. Prisoners who successfully complete an RDAP program may be eligible for early release from confinement.  *See* 18 U.S.C. § 3621(e)(2) and 28 C.F.R. § 550.55.  In order to successfully complete RDAP, an inmate must complete each of three components:  a unit-based component (minimum 6 months), follow-up services, and the transitional abuse treatment (TDAT) component.  28 C.F.R. § 550.53(a).  TDAT is a community-based drug abuse treatment program. 28 C.F.R. § 550.53(a)(3).  The BOP has the discretion to determine which prisoners are eligible to participate in the RDAP program.  18 U.S.C. § 3621(e)(5)(B).  The BOP also has discretion to determine which prisoners will receive a sentence reduction upon successful completion of the

program.  § 3621(e)(2)(B).

Petitioner successfully completed the residential component of the RDAP program while confined at the Federal Correctional Institution in Sheridan, Oregon and, on December 3, 2013, petitioner was transferred to the Port of Hope Residential Reentry Center ("RRC") in Nampa, Idaho in order to complete the Transitional Drug Abuse Treatment TDAT component of the program.  (*See* Dkt. 17, Attach. E and F.)  It had been determined by that time that petitioner would be eligible for early release benefits under § 3621(e) upon successful completion of all three components of the RDAP program.  (*See id*., Attach E.)

As a resident at the RRC, petitioner was required to comply with all rules and regulations identified by the facility, including full-time, employment, counseling, drug and alcohol testing, special conditions of supervision, and programming expectations.  (*See id*., Attach. F-64 to F-67.)  Petitioner had some difficulties adjusting to the RRC and struggled, in particular, with the employment and computer restrictions imposed by the sentencing court as conditions of his supervised release.  (*Id*., Attach. F-25 to F-26.)

Petitioner expressed concern to RRC staff that the restrictions on employment were not realistic given his skill-sets and the amount of restitution he owed.  (*See id*., Attach. F-26.)  Petitioner also indicated to staff that he was unwilling to work in any field involving manual labor and that he wanted to have the restrictions lifted so he could "have a job he feels he is worth."  (*Id*., Attach. F-55.)  Petitioner ultimately did find employment with Bledsoe Construction and began his job doing construction clean-up on December 17, 2013.  (*Id*., Attach. F-79, F-83.)

On December 19, 2013, petitioner submitted a written request to RRC staff asking that he be provided with contact information for the local U.S. Attorney and the FBI because he wanted

REPORT AND RECOMMENDATION
PAGE - 3

to report a crime.  (Dkt. 17, Attach. F-38.)  Victoria Beazer, the acting director of the RRC at that time, received petitioner's request the following day, December 20, 2013, and placed a call to Kevin Straight, Residential Reentry Manager ("RRM") for the BOP.  (*Id.*, Attach. F-36.)  Ms. Beazer put petitioner on the phone with Mr. Straight, and petitioner explained that he had seen a co-worker viewing child pornography and he wanted to turn that person into the authorities. (*Id.*)  Mr. Straight, expressing some hesitation at even entertaining petitioner's report, reminded petitioner that he was supposed to be focusing on his programming.  (*Id.*)  Petitioner then began arguing with Mr. Straight about why he wanted to report the incident.  (*Id.*)  Despite his apparent reservations, Mr. Straight directed Ms. Beazer to call the local police and allow petitioner to give a statement.  (*Id.*)

Petitioner returned to Ms. Beazer's office a short time later and reported that the co-worker he was referring to was actually another inmate.  (*Id.*)  Ms. Beazer called Mr. Straight again to pass along this new information, and Mr. Straight instructed Ms. Beazer to check the computer.  (*Id.*)  Mr. Straight also instructed petitioner to give a statement to the police when they arrived and admonished him to be truthful.  (*Id.*)  Petitioner indicated during this second conversation with Mr. Straight that he was seeking "relief eligibility" for having reported the crime.  (*Id.*)  Ms. Beazer, along with Federal Monitor Ben Maupin, subsequently checked the computer but did not find any child pornography.  (*Id.*)  When the police arrived, petitioner gave them his statement and the police confiscated the computer.[1]  (Dkt. 17, Attach F-36.)

Ms. Beazer's progress notes detailing the encounter with petitioner on December 20, 2013, reflect that petitioner had been spoken to on several occasions regarding his need to focus on his own programming goals instead of arguing and debating issues that had already been

---

[1] The police contacted the RRC the following day and advised that no pornography of any kind was found on the computer and that they could come pick the computer up.  (Dkt. 17, F-37.)

REPORT AND RECOMMENDATION
PAGE - 4

discussed and decided.  (*Id*.)  Petitioner was reminded, in light of these previous warnings, that he was on TDAT and had received a year off his sentence, and that continued non-compliance with programming would result in disciplinary action.  (*Id*.)  Mr. Straight then placed petitioner on Level 2 restrictions for 30 days because of his continued non-compliance with programming goals.  (*Id*.)

The following day, December 21, 2013, petitioner noticed that his regular Saturday church had been cancelled from his itinerary and he asked a monitor at the RRC about the cancellation.  (Dkt. 1-2 at 21.)  The monitor suggested that petitioner address his concerns with Ms. Beazer.  (Dkt. 1-2 at 21.)  According to petitioner, he asked Ms. Beazer about the church cancellation and she explained that he was not allowed to leave the facility except for work for 30 days and that he would need to speak to Mr. Straight if he wanted more information.  (*Id*.)  Ms. Beazer's notes of this encounter reflect that petitioner approached her and asked to be removed from Level 2 "because you owe me."  (Dkt. 17, Attach. F-36.)  Ms. Beazer advised petitioner that the restrictions would not be removed unless Mr. Straight approved.  (*Id*.)  Ms. Beazer then reminded petitioner that his constant arguing and debating every decision was what kept getting him in trouble with staff.  (Dkt. 17, Attach. F-36.)

Ms. Beazer's notes indicate petitioner next requested that he be removed from Level 2 after two weeks and Ms. Beazer once again advised him that he would not be removed from Level 2 until such a removal was authorized by Mr. Straight.  (*Id*.)  Petitioner then told Ms. Beazer that he had done her a favor and if it were not for him the other inmate – the one petitioner had reported to RRC staff and to police – would still be there.  (*Id*.)  Ms. Beazer reported this conversation to Mr. Straight and then issued an incident report charging petitioner with violating disciplinary code 298A most like 204, interfering with staff/extortion.  (*Id*.,

REPORT AND RECOMMENDATION
PAGE - 5

Attach. F-36, F-45.)  A copy of the incident report was delivered to petitioner by the RRC Social Service Coordinator, Tiffany Vega, on December 23, 2013.

Also on December 23, 2013, Mr. Straight issued a transfer order directing petitioner's transfer from Port of Hope to the Ada County Jail in Boise, Idaho.  (*See id*., Attach. G2.)  The reason given for the transfer was petitioner's program failure at Port of Hope and the need to transfer him to an institution with greater security.  (*See id*., Attach. G-1 and G-2.)  On the same date, a Supervisory Community Treatment Coordinator (Jeff Anderson) submitted a request to remove petitioner's provisional § 3621(e) release date on the grounds that petitioner could not fulfill the TDAT requirements.  (*Id.*, Attach. K.)  The request form indicated that the reason petitioner could not fulfill the requirements for TDAT completion was because of "RRC failure due [to] extortion, blackmail." (*Id*.)

Ms. Vega was the staff person assigned to investigate the incident report and she conducted her investigation on December 27, 2013.  (*See id*., Attach. F-47.)  Ms. Vega contacted petitioner at the Ada County Jail and, after advising him of his rights, obtained a statement about the incident in question.  (*See* Dkt. 17, Attach. F-47.)  Ms. Vega also spoke to Ms. Beazer and to Federal Monitor Kevin Pound as a part of her investigation.  (*Id*.)  Mr. Pound was identified as an individual who may have overheard the conversation between petitioner and Ms. Beazer which gave rise to the charges against petitioner.  (*See id*., F-50.)  When Ms. Vega questioned Mr. Pound about being present during that conversation, Mr. Pound indicated that he did not recall details about the content of the conversation.  (*Id*., F-47.)

When Ms. Vega spoke with Ms. Beazer about the conversation, Ms. Beazer stated that petitioner told her to take him off Level 2 because he had done a favor for her and the RRM. (*Id*.)  Ms. Beazer also confirmed that petitioner had asked her at least three times to be removed

REPORT AND RECOMMENDATION
PAGE - 6

from Level 2 despite being told it was the RRM's decision.  (*Id*., Attach. F-47 to F-48.)  After collecting information from petitioner, Mr. Pound, and Ms. Beazer, Ms. Vega was unable to conclude if the charged violation had occurred and she referred the matter to the Center Disciplinary Committee ("CDC").  (*Id*., Attach. F-47.)

Ms. Vega advised petitioner on the day of the investigation that he was being referred to the CDC and that the hearing would be held at 2:00 p.m. on December 31, 2013 at the Ada County Jail.  (*Id*., Attach. F-50.)  On the notice of hearing form, petitioner indicated his desire to have a staff representative, and he identified Mr. Pound as his staff representative.   (*Id*.) Petitioner also indicated that he wished to call witnesses, and he identified as his prospective witnesses all Port of Hope monitors who were working at the time of his conversation with Ms. Beazer on December 21, 2013 who could testify that the conversation she reported did not occur, and an inmate Hunter who petitioner indicated could testify that though he had requested to speak to Ms. Beazer in her office, the conversation did not actually take place in an office.  (Dkt. 17, Attach. F-50.)  Finally, petitioner signed an advisement of rights form acknowledging that he had been advised of the rights afforded him at a CDC hearing.  (*Id*., Attach. F-51.)

The CDC for the December 31, 2013 hearing was comprised of Case Manager Jennifer Jordan, Federal Monitor Benjamin Maupin, and Federal Monitor Kimberly Rediker.  (Dkt. 16, Attach. D-4 to D-5.)  Petitioner was apparently advised during the hearing that Kevin Pound could not be called as his staff representative because he had been questioned as a witness in the investigation.  (*See* Dkt. 1 at 9.)  Petitioner was advised of the option of postponing the hearing to obtain another staff representative but petitioner instead waived his right to a staff representative.  (*See id*. and Dkt. 16, Attach. D-4, D-11.)

The CDC report of the hearing indicates that petitioner provided a verbal statement

REPORT AND RECOMMENDATION
PAGE - 7

during the hearing, but no documentary evidence, and that three requested witnesses were not called. (Dkt. 16, Attach. D-4.) Specifically, the report notes that Sue Brown, who is apparently a Federal Monitor at the RRC, was not called because attempts to reach here were unsuccessful, that Kevin Pound was not called because he had submitted a statement indicating that he was not aware of the incident and did not hear the conversation between petitioner and Ms. Beazer, and that Inmate Hunter was not called because his information regarding the location of the conversation was not deemed relevant to the charges. (*Id*., Attach. D-4, D-15.)

The CDC, after considering petitioner's statement, the incident report of Ms. Beazer, and the investigative report of Ms. Vega, found that petitioner had committed the act as charged; *i.e.*, prohibited act 298A most like 204: interfering with staff/extortion. (*Id*., Attach. D-7.) The CDC indicated that its decision was based on inconsistent statements and the statement given by Ms. Beazer that petitioner had told her to take him off Level 2 because he had done a favor for her and the RRM. (Dkt. 16, Attach. D-7.) The CDC recommended a sanction of loss of 50% of petitioner's good conduct time and explained that this recommendation was based on petitioner's "PLRA status and prior history of argumentative and undermining behavior with staff." (*Id*.) Petitioner was advised of the finding and of his right to appeal, and the matter was referred by the CDC to the disciplinary hearing officer ("DHO") for further hearing. (*Id*.)

On January 13, 2014, BOP DHO Randy McWilliams certified the CDC's findings and disallowed 27 days of good conduct time. (*Id*., Attach. D-5.) On January 15, 2014, Mr. Straight sent a letter to petitioner at the Ada County Jail, together with a copy of the CDC's report, and advised him again of his right to appeal. (Dkt. 17, Attach. H-1 to H-8.) Petitioner was advised that any appeal should be filed with the Regional Director and he was provided the Regional Director's name and address. (*Id*., Attach. H-1.) Petitioner subsequently appealed the

REPORT AND RECOMMENDATION
PAGE - 8

1    disciplinary finding to the Regional Director's Office, and the appeal was denied.  (*See* Dkt. 15

2    at 2.)  Petitioner thereafter submitted a final appeal to the Office of General Counsel and,

3    pursuant to 28 C.F.R. § 542.18, that appeal was deemed denied when the Office of General

4    Counsel failed to timely provide a written response to the appeal.  (*See id.*)

5                                                    DISCUSSION

6                Petitioner asserts that the BOP denied him his right to due process in conducting the

7    disciplinary hearing which resulted in the loss of good conduct time credits and his expulsion

8    from RDAP.    Specifically, petitioner claims the BOP violated his due process rights by

9    conducting a disciplinary hearing without adequate notice, by denying him a staff representative,

10   by denying him the right to present his statements of events, to call relevant witnesses, and to

11   present relevant exculpatory evidence, and by denying him the right to impartial decision

12   making.  Petitioner also contends that his due process rights were violated because the CDC's

13   guilty finding was not based upon sufficient evidence.   Finally, petitioner contends that his

14   expulsion from RDAP violated due process.[2]

15                                              Disciplinary Hearing

16               When a prisoner is deprived of good time credit as a sanction for misconduct, a protected

17   liberty interested is implicated and the prisoner is entitled to the protections of the Due Process

18   Clause.  *Wolff v. McDonnell*, 418 U.S. 539, 556-57 (1974).  In *Wolff*, the Supreme Court outlined

19   the minimum procedures required for prison disciplinary proceedings.  *See Mitchell v. Dupnik*,

20   75 F.3d 517, 525 (9th Cir. 1996).  The Supreme Court held that due process requires an inmate

21   be afforded:  (1) advance written notice of the claimed violation – at least twenty-four hours

22

23            [2]  Petitioner also alleges in his petition violations of BOP rules but such violations, even if they occurred,
     are not sufficient to sustain a claim under § 2241.  *See Reeb v. Thomas*, 636 F.3d 1224, 1227-28 (9th Cir. 2011).
     Thus, the Court will confine its discussion to petitioner's constitutional claims.

REPORT AND RECOMMENDATION
PAGE - 9

prior to the disciplinary hearing; (2) a written statement by the factfinder of the evidence relied upon and the reasons for the disciplinary action; (3) the opportunity to call witnesses and present documentary evidence in his defense "when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals;" (4) assistance from others for an illiterate inmate or in a complex case; and (5) an impartial decision maker. *Wolff*, 418 U.S. at 563-71.

Respondent asserts that petitioner was afforded all of the procedural protections required by *Wolff*. The record supports that assertion. The evidence in the record demonstrates that petitioner received notice of the charge against him on December 23, 2013, and that he received notice on December 27, 2013 that the matter was being referred to the CDC for a hearing and the hearing would be held on December 31, 2013. (*See* Dkt. 16, Attach. D-6, D-11.) Petitioner had ample notice of the hearing.

The record also makes clear that petitioner was provided a written statement by the CDC which identified the evidence considered at the disciplinary hearing, as well as the factual basis of the CDC's guilty finding, and the justification for the recommended sanction. (*Id.*, Attach. D-7.) While the CDC's statement regarding the factual basis of its guilty finding was not, in this Court's view, a model of clarity, it was sufficient to put petitioner on notice that the CDC had essentially credited Ms. Beazer's statement regarding the charged conduct and discredited petitioner's statement denying that conduct. (*Id.*)

The evidence in the record establishes that petitioner was provided the opportunity to call witnesses and to present documentary evidence. While petitioner complains that he was denied the right to call relevant witnesses, the record reflects that the only witness he was denied was inmate Hunter. (*See id.*, Attach. D-11, D-15.) As noted above, petitioner wanted inmate Hunter to testify as to the location of the conversation between petitioner and Ms. Beazer which gave

REPORT AND RECOMMENDATION
PAGE - 10

rise to the disciplinary charge, but the CDC reasonably determined that the location of the conversation was not relevant to the charge. (*See id.*, Attach. D-4, D-11, D-15.)

Another prospective witness, Sue Brown, one of the Federal Monitors working on the day of the incident, could not be reached despite several attempts. (*See id.*) Petitioner offers nothing in this proceeding to suggest that Ms. Brown would have provided any exculpatory evidence had she testified. Finally, as to third prospective witness, Federal Monitor Kevin Pound, Mr. Pound did not testify but he did provide a written statement indicating that he was aware of the conversation at issue but did not know what was said. (Dkt. 16, D-4, D-15, D-16.) In sum, petitioner makes no showing that he was denied the right to call relevant witnesses.

The record, likewise, does not support petitioner's assertion that he was denied the right to present relevant exculpatory evidence. Petitioner contends that he asked the investigator to obtain his mental health records in order to verify his prior mental health issues as well as requests for mental health treatment and medication while at the RCC, but that she denied the request as irrelevant to the matter. (Dkt. 1 at 8.) Petitioner makes no showing that his mental health records were in any way relevant to the charge leveled against him by Ms. Beazer.

Petitioner also asked the investigator to obtain camera footage from the monitor's office to show that petitioner didn't meet with Ms. Beazer in the location identified in the incident report and, according to petitioner, the investigator told petitioner she would review the footage. (Dkt. 1 at 8.) No such camera footage was before the CDC at petitioner's disciplinary hearing but it would presumably have been deemed irrelevant for the same reason the testimony of inmate Hunter was deemed irrelevant.

Petitioner complains as well that he was only permitted to submit one page of a six page statement he had prepared to explain his position to the CDC. (*Id.* at 9.) However, the record

REPORT AND RECOMMENDATION
PAGE - 11

1   makes clear that petitioner was permitted to make a statement to the CDC and that the lengthy

2   written statement did not constitute documentary evidence which he was entitled to present

3   under the *Wolff* standard.  (*See* Dkt. 16, Attach. D-4.)  Petitioner makes no showing that he was

4   denied the right to present relevant evidence.

5        Petitioner asserts that he was also denied a staff representative at the disciplinary hearing

6   despite initially requesting Mr. Pound to be his representative.  (Dkt. 1 at 9.)  However, the

7   record reflects that petitioner waived his right to a staff representative when he was advised the

8   Mr. Pound could not serve as his representative given that he had been questioned as a witness.

9   (Dkt. 16, D-4, D-11.)  Even assuming, as petitioner appears to suggest, that he would have

10  requested another staff representative and delayed his hearing if he had been aware at the time

11  that his provisional § 3621(e) release date had already been removed (*see* Dkt. 1 at 9), petitioner

12  still fails to establish any due process violation.  Petitioner is clearly not illiterate and the

13  disciplinary proceeding was not so complex as to require the assistance of a representative under

14  the due process standard announced in *Wolff*.

15       Finally, petitioner complains that he was denied an impartial decision maker, apparently

16  because Federal Monitor Benjamin Maupin was a member of the committee which conducted

17  petitioner's disciplinary hearing.  (Dkt. 1 at 8.)  According to petitioner, Mr. Maupin was present

18  during one of the conversations between Ms. Beazer and petitioner on December 20, 2013 when

19  they were discussing petitioner's report of criminal activity, and Mr. Maupin showed petitioner

20  photographs which helped him to positively identify the individual whom he saw viewing child

21  pornography at the RRC.  (Dkt. 1 at 5.)  However, while the reporting of the crime to Ms. Beazer

22  was a precursor to the conversation which resulted in the disciplinary charge being filed against

23  petitioner, Mr. Maupin was not a witness to the conversation which gave rise to the disciplinary

charge, nor was he apparently involved in any other way with the subject of the disciplinary charge.  Petitioner's contention that he was denied an impartial decision maker is not supported by the record.

Viewing the record as a whole, this Court concludes that the BOP's disciplinary proceedings against petitioner did, in fact, comport with the minimum due process requirements outlined in *Wolff*.

<u>Sufficiency of the Evidence</u>

Petitioner also contends in his habeas petition that there was insufficient evidence to support the CDC's finding of guilt at the disciplinary hearing.  The decision of a prison disciplinary board need only be supported by "some evidence" in order to satisfy due process. *Superintendent v. Hill*, 472 U.S. 445, 455 (1985).  The Supreme Court, in *Hill*, explained that "[a]scertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id*. at 455-56.  The Court further explained that "[t]he fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact." *Hill*, 472 U.S. at 456.

It is true that there was limited evidence before the CDC in this case.  Petitioner made a statement to the CDC at the hearing, and the CDC considered the statement of Ms. Beazer contained within the incident report.  (Dkt. 16, Attach. D-4, D-6, D-7.)  The CDC also considered the investigative report which contained statements from both petitioner and from Ms. Beazer.  (*Id*., D-8 to D-10.)  It is clear that the CDC credited the statements of Ms. Beazer and rejected petitioner's explanations and denials.  Ms. Beazer's statement that petitioner

REPORT AND RECOMMENDATION
PAGE - 13

requested to be moved from Level 2 restrictions "because you owe me" was sufficient to support a guilty finding on the charge of interfering with staff, most like extortion. (*See* Dkt. 16, Attach. D-6.)  Petitioner's admission to the investigator that he did, in fact, approach Ms. Beazer three times regarding the removal of the restrictions, despite being advised repeatedly that the RRM would have to authorize any modification to the restrictions, also supports the conclusion that petitioner interfered with RRC staff.[3]  (*See id*., Attach. D-6, D-8 to D-10.)

## RDAP Program

Finally, petitioner contends that his expulsion from RDAP violated due process. Respondent argues that this Court lacks subject matter jurisdiction to review the BOP's individualized determinations under 18 U.S.C. § 3621.  Respondent is correct.  The Ninth Circuit has made clear that the BOP's substantive decisions to admit a prisoner to RDAP, to grant or deny a sentence reduction for completion of RDAP, or to remove a particular inmate from an RDAP program are not subject to judicial review.  *Reeb v. Thomas*, 636 F.3d 1224,1227 (9th Cir. 2011).  Petitioner's claim regarding his RDAP expulsion clearly falls within the category of claims that are beyond this Court's jurisdiction to review.

## Unsupported Allegations

Petitioner, in the concluding paragraph of his petition, asserts that the actions of Mr. Straight and his agents in extending petitioner's period of custody and "refusing to provide an adequate remedy" deprived petitioner not only of his due process rights, but also of rights conferred by the First Amendment and the Equal Protection Clause of the Fifth Amendment.

---

[3] The CDC also indicated in its report that it had based its decision on petitioner's "inconsistent statements." (*See* Dkt. 16, D-5, D-7.)  The CDC failed to make clear in its report what it meant by "inconsistent statements" and the Court's review of the materials considered by the CDC failed to illuminate the reference. Disciplinary committees and hearing officers would be well served to note that such references, without any accompanying explanation, are useless.   In this instance, even discrediting the reference to "inconsistent statements," there was sufficient evidence to support the disciplinary committee's guilty finding.

REPORT AND RECOMMENDATION
PAGE - 14

(Dkt. 1 at 13.)  Petitioner offers no evidence or argument to support the claimed violations of his rights First Amendment and Equal Protection Clause and, thus, the Court summarily rejects such claims.

CONCLUSION

For the foregoing reasons, this Court recommends that petitioner's petition for writ of habeas corpus be denied and this action be dismissed with prejudice.   A proposed order accompanies this Report and Recommendation.

DEADLINE FOR OBJECTIONS

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **fourteen (14)** of the date on which this Report and Recommendation is signed.  Failure to file objections within the specified time may affect your right to appeal.  Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed.  Responses to objections may be filed within **fourteen (14) days** after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on **December 5, 2014**.

DATED this 13th day of November, 2014.

_____
Mary Alice Theiler
Chief United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 15